Mr. Peombe, before we start, I'd like to make a few comments, and your colleague on the other side of the aisle will make note. You filed a complaint with over 400 pages of testimony attached to it from Arthur. Yes, sir. Okay. As a matter of fact, it was all of the testimony that was before Judge Fuller and Arthur. Yes, sir. I was going to write up something else. I don't know how familiar you are with the rules of procedure, but when you did that by lawyers don't do that unless they intend all of that evidence to be incorporated into the complaint by reference. You didn't do that, but that's the way the rules are. Yes, sir. All right. Then the next thing that happened was that when Judge Watkins entered summary judgment, he incorporated into his ruling findings that he made in Arthur. Do you realize that? Yes, your Honor. Wait a minute. Are you familiar with issue preclusion? Yes, your Honor. Tell me what you think it is. Your Honor, if the issue has been determined by the court in that case— No, no, no. Just in the abstract, what is issue preclusion? You can't raise an issue that's already been decided by the court. How does issue preclusion get before the court, the second court? It has to be raised, your Honor. How do you raise it? It would have to, I believe, from the defendants, be raised as an affirmative defense. That's right. Did they raise it as affirmative defense? As far as I know, your Honor, they did not. And did you object to the courts—did you move under 59 to the courts using findings in another case that was tried to the bench in a summary judgment setting? No, your Honor, we did not. So we have—I speak for myself. I have a hard time understanding what is in this record for summary judgment purposes. Your Honor— I assume, because of what you did, that the whole Archer case is in the record for summary judgment purposes. Your Honor, given that the district court did rely on that—the district court relied on that as part of its ruling on summary judgment. The district court relied on the Archer record for the Penta-Barbatol and Theo-Penta findings. Yes, we could not rely on it for the third. And they were at issue in this case. Yes, they were at issue in this case. I understand. And the district court did that without an affirmative defense? Correct, your Honor. And without your objection? Correct, your Honor. Okay. That's absolutely correct. Okay. So you see why I say that it's very difficult to determine what's in the record in this case? Yes, your Honor, and hopefully I might be able to clarify some of that, your Honor. Tell us how huge this record is. Well, your Honor, when this case started, the first two complaints that were filed in this case, one was Mr. Grayson, whose case is—we've moved to consolidate his case. His was the first case, and it was filed in 2012. Counsel, we have the Archer record in this case. Yes. Is there anything in the Archer record that is not in this record? There are obviously depositions and things like that, your Honor. We have none of that. You attached the testimony that was before Judge Fuller. We attached that from the 2012 hearing. We did not attach anything from the trial. I understand, but you intended that to be part of the record for summary judgment purposes? Yes, your Honor. And the district judge didn't realize that? When we filed those complaints, that was the evidence we had. And the State didn't move to strike these attachments as irrelevant? No, your Honor, they did not. Okay. Go ahead with your argument. None of that. Thank you, your Honor. As your Honor noted, this case is here on summary judgment. The district court found that with respect to the second glossop prong, there was no genuine issue of material fact. Basically, he found that there was a complete failure of proof on the second prong in glossop. We believe that the evidence that we presented in this case differs from the previous cases and that there is sufficient evidence to allow this case to go to trial. Why don't you get to specifics, Mr. Piombi? Start with Thiel-Petal. This is a 54B judgment. Would you like me to start? You know what a 54B judgment is? Which would you like me to start? You do know? Yes. Okay. We're here on the three alternatives. Which would you like me to start with, your Honor? The first one. The first one that we pled was pent-of-arbitral. And Judge Watkins decided that already and said so in the opinion. Yes, your Honor, although what I will say is he decided it on different facts. We had different experts and different evidence than they had at the Arthur trial. Specifically, your Honor, we had two experts, our expert and defendant's expert, who both testified that it was possible for the Department of Corrections to get pent-of-arbitral. In fact, defendant's expert, upon questioning at deposition, said it was a resolvable proposition. He also later— Do you know what that word means? Was it defined in the record? No, your Honor, but it means possible. On another point, by the way, there were no Daubert hearings in this case at all, were there? No, your Honor, we didn't get to that. It seems to me that's what you get to first. No one ever asked for one, your Honor. We had experts, we had discovery, and there was summary judgment motions. Our experts, the experts that we call, we had a Ph.D., we had two Ph.D. pharmacologists, and we had a M.D. anesthesiologist, who his testimony is not relevant for these alternatives. But with respect to pent-of-arbitral, what the record indicates is that experts said it was possible to get pent-of-arbitral. We know three states already get it. That's what we pleaded originally. The defendants put on testimony that the Department of Corrections had tried to get pent-of-arbitral and couldn't get it. In fact, they had their expert, after his deposition, call pharmacists to ask if they could compound pent-of-arbitral. He put in his affidavit that he did not find one that would, but he specifically reiterated what he said was that he believed one was available and one could do it. The same testimony came from our expert, your Honor, that a pharmacist who is trained could compound pent-of-arbitral, and that while they did not have the name of a person specifically, one could be found. That was the evidence. So we had the conflict of evidence here with the Department saying they couldn't get it and we saying they could get it. I'd like to change the subject for just a moment, if that's all right. That's fine, Your Honor. So in Bays, the Supreme Court said, basically, there's no argument that if the first drug does not anesthetize, then administration of the second and third drugs is unconstitutional. Would you agree that they said that? Absolutely, Your Honor. Okay. So if that's the case, and your argument is that the first drug does not anesthetize, is there a problem with the district court not having decided that issue in the first place? Your Honor, after Glossip, we believe that the order would be that you had to decide whether the protocol was unconstitutional before you got to whether the alternatives— Counsel, we understand all of that, but this case got tried the other way around. It did, Your Honor. That's what's before us. The problem is the district court believed that it could resolve the case without resolving that question. We understand that. That's why it issued a 54B judgment. Yes, Your Honor. So I have another question related to this because what's not clear to me and what it seems like might be the case is that there are two different sort of tests. One test is the Bays-Glossop test, and that applies when the method of death or the method of execution causes pain but not an unconstitutional amount of pain, okay? And that's when we do the two-step process. But then it seems like if there is an unconstitutional amount of pain, that there might be some other test that applies. What are your thoughts on that? I would actually agree with that, Your Honor. It would seem that if there is a protocol that on its face would be unconstitutional, for example, taking the Bays example, Your Honor, if the state devised a protocol that was just an injection of potassium chloride with no anesthetic, it would seem clear that under Bays that would be unconstitutional. So that would be unconstitutional on its face. If it's unconstitutional on its face, then we don't even get to the second prong, right? Because otherwise we would be saying it's okay for the state to execute someone in an unconstitutional way. Absolutely, Your Honor. So would the answer then be that the state has to come up with an alternative that is not unconstitutional? I mean the burden would be on the state as opposed to being on the petitioner? At that point, Your Honor, if it is facially unconstitutional as we described, I would think the burden would have to be on the state because otherwise what you have is, as you noted, a situation where the state has an unconstitutional protocol but it might be permitted to use it because the defense can't come up with a feasible alternative for whatever reason that is. Okay. So if your argument here is that the protocol is facially unconstitutional because the first drug, midazolam, does not actually anesthetize the condemned, then don't we need to have that issue decided before we even get to the issue of whether there might be alternatives that your client has come up with because your client wouldn't have to come up with alternatives if you're right about the fact that there are two different tests, if it's facially unconstitutional? If the court, yes, Your Honor. If the court wanted to remand for the district court to actually decide the Eighth Amendment claim, then we could have full hearings on the question of whether this protocol… But how can you compare the alternative when you don't know what the protocol is? As in knowing what… Just a plain comparison. You're a lawyer. You know that. Your Honor, we do. We have a heavily redacted copy of the protocol, so we know. I understand that. You're talking about the… You don't understand my question, counsel. Let's suppose you have findings about midazolam in the protocol, some kind of finding. Yes, Your Honor. You don't know whether the alternative satisfies… Let's assume that you can find that that's unconstitutional. You can't decide whether the alternative satisfies the law without knowing exactly what the first one is. Well, correct, Your Honor. And you have to make a comparison. Well, Your Honor, I think the way the court… The comparison we know better than the midazolam protocol. You're out of court. Well, Your Honor, under Glossip, the court does require us to plead a protocol that we introduce to it. Counsel, but we're here on summary judgment now. Exactly. And that's why Your Honor's question seemed to go to what would happen at a trial when we finally got to this point. I think if the court took this as a two-stage process, where first we decide if the protocol that exists is unconstitutional, then at that point, once that question is decided, we look at the alternatives, which Glossip requires us to plead. Sorry. This is how I'm understanding it. But I may be mistaken, and I want to ask opposing counsel the same question. It seems to me like the first question we ask is, is this execution protocol on its face unconstitutional? If yes, then we go this prong, and the state has to come up with an alternative. Your client doesn't. It's the state's job, because the state cannot execute someone in a way that is unconstitutional. If no, right, maybe it causes pain, but it's not an unconstitutional amount of pain, as the Supreme Court has described that in Glossip, then we have to look at alternatives that your client has come up with. That's what we have to do. Am I misunderstanding this in some way? Your Honor, I think that's a fair interpretation of Glossip and Bayes. The alternative should never come into play unless there is either the alternatives proposed by the plaintiff. Let me clarify that. An alternative proposed by the plaintiff shouldn't come into play until we have decided whether the protocol that the state's using, if there's a potential issue with it. I would have added a maybe, Your Honor, to that question. And that goes, I believe, to the comparison Judge Schoflat was talking about. If there is a protocol that may cause pain, you know, that is questionable, and we propose a protocol that is equally feasible and doable, then should the state be allowed to use a protocol that could cause pain when there's another protocol out there that we know wouldn't cause pain? I'm assuming a hypothetical protocol that would cause no pain. Right. Under Bayes and Glossip, there would have to be a substantial reduction in the risk of pain. And the risk of pain. But that only comes into play if the method of execution that the state has chosen is not on its face unconstitutional. Not facially unconstitutional. Right? Yes, Your Honor, because I'm sure we can all imagine methods of execution that we would just look at and go, this is facially unconstitutional. Well, for example, didn't the Supreme Court say effectively in Bayes that executing someone with a second and third drugs without giving them an anesthesia beforehand would be unconstitutional? Yes, absolutely, Your Honor. The court was very clear about that in Bayes, that what made that three-drug protocol constitutional was the injection of sodium pentol then as the anesthetic. So that made that constitutional. Made that protocol constitutional, at least. Your Honors wanted me to go through the alternatives based on how Judge Watkins ruled on them. I spoke briefly about pentobarbital. I'll speak also about sodium thiopental at this point. Again, we acknowledge that sodium thiopental is not manufactured anywhere in the United States. But, again, both pharmacists experts stated it could be compounded and it could be made. The Department of Correction says they have not been able to get thiopental. This would seem to be the classic dispute of material fact on the question of this alternative. However, it's the third alternative that we proposed where the only dispute in the record seems to be the actual amount necessary to cause an execution. We pled in our complaint based on information that was in the Supreme Court's opinion in Glossa that a 500 milligram dose of midazolam alone would be toxic and fatal. We pled that in our complaint. We then obtained, we obtained experts. Our expert devised a protocol with midazolam only. Defendant's expert stated in his deposition that 500 milligrams of midazolam was more than toxic. By itself would be completely fatal and would be painless. He said that the district court granted summary judgment on the ground that our expert's proposal was different from what we pled, not acknowledging at all, in fact there is no reference in the order, that there's no reference in the order to what defendant's expert said. So we have a dispute in the record on that claim, but the dispute really is only on the amount that would be fatal. There is no dispute in the record on whether midazolam would actually work. Both sides' experts said it would. So in that alone, regardless of whether Your Honors thought that the burden was properly met for summary judgment with pentobarbital and with sodium thiopental, alone with midazolam, that should have been met. The dispute is about the amount that would be fatal. We understand the point. Yes, Your Honor. The state also made two other arguments for why the district court decision should be affirmed. One was the law of the case, specifically citing to the Brooks argument. No, that's out. Thank you, Your Honor. And the last was the statute of limitations argument. They argued that these cases that this court should affirm. That is an issue the court didn't reach. Yes, the court did not discuss that. No, he didn't reach it. Correct. He did not reach that, however. Mr. Piombi, do you understand that? Yes, and I just wanted to address in case the court had any questions concerning that. We're on a 54B judgment that decided to one point whether any of the three alternatives passed muster. Yes, Your Honor. That's all. Absolutely, Your Honor. I only wanted to address it because the state had addressed it in their brief. However, if I may, Your Honor, the only other thing I'd like to add about that is that the district court had ruled on that question and had denied it in their motions to dismiss all those cases. Mr. Piombi, we understand the record. Thank you, Your Honor. I was just making that point. You reserved your time. Yes, Your Honor. If there are no further questions, Your Honor. We'll hear from Mr. Govan. Can you tell us what's in the record in this case? Yes, Your Honor. Of how broad it is? Yes, Your Honor. First, the initial question, Your Honor. I believe, I'm fairly certain that in our answer to the complaint, the defendants did plead res judicata. I don't have a document number in front of me. No, no, not res judicata. Issue preclusion. Yes, Your Honor. All right. And the district judge didn't pass on it. Correct, Your Honor. But, again, this court can affirm for any reason, even if it's not stated in the reason given by the district court of course. You will agree that the court decided the case based in part on what was decided in Arthur? Correct, Your Honor. All right. So the entire Arthur record is before this court on summary judgment? Your Honor, there are portions of the Arthur record. Everything was attached to the, you didn't move to strike the complaints attachments? Correct, Your Honor. Even though they are irrelevant? Correct. You agree they were irrelevant? Correct, Your Honor. They added nothing? Correct. But they were there. So that's part of the record? Correct. The portions that they attached, yes. Your Honor, there were . . . I gather it's also the district judge's judgment in Arthur. Findings of fact and conclusions of law. Correct. The district court did reference those. Are all part of the record in this case? Yes, Your Honor. Okay. Yes, Your Honor. Your Honor, the district court's grant of . . . Is there anything else? That is a part of this record? Yes, it's a part of this record. Your Honor, no. There was a lot of other evidence in Arthur that was not relevant to this particular consolidated action. There was an as-applied challenge in Arthur. Obviously, that is not a part of any of the evidence. No, we have two. We have this 54B judgment and we're dealing with the alternatives. Correct, Your Honor. Okay. Correct. And that was one of the relevant issues in Arthur that there was a trial on. But in this case, may it please the Court, I'm Thomas Gilvan from the State of Alabama. The district court's grant of summary judgment in this case was correct. An inmate challenging a method of execution as unconstitutional must establish two things under Bayes and Glossop. First, they must establish there's a substantial risk of serious harm that is sure likely to cause needless suffering. And second, they must establish a known and available alternative that is feasible, can be readily implemented, and in fact significantly reduces the risk of harm. What I'd like to do is ask you the same questions I asked opposing counsel. And that is, it seems to me that if there is a facially unconstitutional method of execution that the State uses, that the Bayes-Glossop test does not apply. Because, first of all, let me ask you, do you agree with that? No, Your Honor. The Bayes and Glossop test is what applies to this particular case. Let me ask you a question then. Is it your position, let's say that a State adopts as its only method of execution drawing and quartering, okay? Clearly, would you agree with me that that is an unconstitutional method of execution? Yes, the Supreme Court has intimated as much. So at that point, is it okay for the State then to go ahead and execute the person using drawing and quartering if the person doesn't come up with some alternative that's known and available? Your Honor, I think what you're referring to is a per se challenge to a statute, which would not be in a 1983 context. That would be more of an habeas context. No, I'm not. I'm referring to the method of execution. If the method of execution is on its face unconstitutional, is it okay for the State to go ahead and employ it if the defendant doesn't come up with his own means of execution? Your Honor, if it is a method of execution challenge, they would need under Bayes and Glossop to clear it. Can you answer my question, please? Your Honor? Is it okay for the State to employ an unconstitutional method of execution if the defendant does not come up with his own? I'm not talking about a constitutional method that may impose some pain. The Supreme Court has said that's okay. There's a certain amount of pain that is to be expected and can be tolerated under the Eighth Amendment. I am talking about an unconstitutional method of execution. Is it okay for the State to go ahead and execute someone using an unconstitutional method of execution if the defendant does not come up with an alternative? Your Honor, alternative. Your answer has to be no. It's a hypothetical question. Yes, Your Honor. And you have to say no. It is no. Correct, Your Honor. Again, this is something that we're discussing. If you threw the prisoner into a snake pit and that was the only means of execution and the inmate had no alternatives, the question was could you still throw him in a snake pit? And, of course, the answer is zero, no. Correct, Your Honor, but that's not what we're here before today. That's the question that was put to you. Yes, Your Honor. The method of execution is unconstitutional and there are no alternatives. Can you still proceed? If there's an unconstitutional method. The answer is no, you can't. Correct. Correct, Your Honor. Okay, so that being the case, it is the defendant's position or the petitioner, I guess, in this case. It's the petitioner's position that, and I should start by saying, of course, in Bayes, the Supreme Court recognized that if you administer the second and third drugs without first anesthetizing the condemned, that that is, and I think they used the word, unconstitutional. That that is an unconstitutional method of execution. It is the defendant's or, again, the petitioner's position in this case that midazolam does not anesthetize the petitioner. Okay? So, if the petitioner is right about that, then the State has to come up with an alternative, as we've just discussed. Would you agree? No, Your Honor. In a method of, and again, we would apply, looking at this protocol, this is the exact same protocol that was addressed in Glossip. Glossip, the Supreme Court didn't apply a different standard. I understand. They applied the Bayes standard. But in Glossip, the court was acting on a finding of fact by the district court that midazolam did, in fact, anesthetize the condemned. Right? Correct. We don't have that here. Correct. And in this case, the allegations are, and the evidence that was submitted, though it wasn't ruled on, there is a material issue of fact, again, though not ruled on, about whether the midazolam actually anesthetizes the condemned. Would you agree? At best, there would be a material issue of fact. Okay. Potentially on the first prong. There's not on the second. Okay. Well, there's a material issue of fact that midazolam does not anesthetize. Would you agree with that? Actually, no, Your Honor. I would not agree with that because the plaintiff's own experts testify. Again, this issue is not before this court. I understand. But the plaintiff's own experts, both of them, Dr. Tackett and their anesthesiologist, Dr. Froelich, admitted that a sufficient amount of dose of midazolam would put someone into a drug-induced coma, a deeply unconscious state where they would not be able to respond to noxious stimuli. Well, actually, what they said.  And Dr. Buffington also agreed, Your Honor. He said that 500 milligrams would produce death. Yes, Your Honor. He said that it could cause death. He admitted that it would. No, he said a jury could find that it would cause death. Well, let me ask you another one. In the Smith case and in the Brooks case, the district judge issued an order to show cause why the inmate should not be executed with 500 milligrams of midazolam in accordance with the first drug of the protocol. And when the court entered that order to show cause, the State presented the court in camera with a protocol. Correct, Your Honor. Okay. A district judge would not ever enter a consent judgment if it was unconstitutional, if the effect of the judgment was unconstitutional. So what the judge decided after looking at the State's protocol was that it would be constitutional to execute the inmate with 500 milligrams of midazolam in one anabolis. That would produce death and it would not violate the Eighth Amendment. That is effectively what the court said. Now, I realize that the inmate backed out, but that is the reason why I say what is in the record in this case. It seems to me it is a universe. But what would you say to that? Your Honor, I The State made a representation to the court and presented evidence that an execution with 500 milligrams of midazolam would produce death and would do so commensurate with the Eighth Amendment. That is your representation. Your Honor, we presented, in response to the judge's show cause order, we presented a protocol in response to the judge's show cause order. That was never the State's position that that was a protocol that should be Why would the State present it if it thought it was unconstitutional? Not that the State thought it was unconstitutional. No, or that it would not satisfy the Constitution. Well, because again, it is the inmate's burden to show that it would significantly reduce Your Honor, you are missing the point. The State presented to the judge a protocol and said that it would execute the inmate pursuant to that 500 milligram bolus. And the implication of the State's response, I speak for myself, the implication was that would satisfy the Eighth Amendment, would not infringe the Eighth Amendment. And that solution fell apart, I realize that. But the State made that representation. Your Honor, and to clarify, I don't know if the State ever indicated a one dose of a 500 milligram. I read every word in the record. It made the representation. I speak as a judge. Yes, Your Honor. I put myself in the district judge's position. I'm the district judge and you made the representation and you asked and I want the protocol before I'll pass on it. Nothing was said by the State, judge, here's the protocol, but 500 milligrams in one bolus would violate the Constitution. Your Honor, correct. We did not make that specific representation. So the judge proceeded. Correct, Your Honor. Okay. And if the judge had in effect ordered the execution because the inmate consented, the judge would have found that it did not violate the Eighth Amendment. If that was the case, Your Honor. The judge would have made that finding in part on the State's representation because it is the State which has all the evidence. And part of the evidence that the State argued was that we argued that 500 milligrams by itself could not be limited to that. If a one drug protocol was going to be given, that enough midazolam would need to be given beyond 500 milligrams. Well, whatever the case was, the State made the representation is what I'm saying. Correct, Your Honor. All right. And as far as I'm concerned, that's what this record chose. And I think, Judge, that may be the case. But as far as turning to what the district court's grant of summary judgment, when it was moving back into an inmate . . . I don't think the district judge took into account everything that he should have taken into account of. And in part, it's because your representations and your arguments. I've never seen a summary judgment case like this, Counsel. You haven't either, I'm sure. No, Your Honor. Have you ever seen a summary judgment case where you took a case that was tried to the bench and you adopted it into a hearing on summary judgment? No, Your Honor. And I believe in this particular case that a judge . . . And none of the witnesses being qualified to testify under Daubert? Not yours, not theirs either. Correct, because we haven't reached a trial yet. Never ask pretrial to have the witnesses qualified to testify under Daubert. Correct, Your Honor. That was your burden, to have your own witnesses qualified to testify under Daubert. And, Your Honor, while the state moved for summary judgment in this particular case outside of the qualification issue, was because the plaintiffs in this case still had the burden in this particular . . . to entitle them to a trial to demonstrate a known and all available alternative. Let me ask you about some of that evidence, Counsel. I thought that Drs. Froelich and Tackett, the defense experts, opined that midazolam can render someone unconscious, but doesn't or at least may not reduce the person's perception of pain. Is that correct? I'm sorry, Dr. Tackett, Your Honor? Tackett and Froelich, they both said midazolam will make someone unconscious, but said might not necessarily suspend their feeling of pain. Dr. Froelich initially testified to that, and he admitted that there was no necessarily . . . there was particular evidence supporting that, that that was a theory that he had . . . smaller clinical doses, but he admitted that there was no actual evidence establishing that particular fact, that there is this ability to render unconscious, yet somehow you would still feel insensate . . . not feel insensate to pain. But then again later, Dr. Froelich and Dr. Tackett did admit that a sufficient amount of dose of midazolam would render someone in a drug-induced coma, which they indicated would mean you would not be responsive to pain or not be responsive to noxious stimuli. Didn't Dr. Tackett say that it was highly speculative to say that midazolam would have that pain-eliminating effect? The way that it works on the brain? Yes, Your Honor, but in that particular context, we would submit that Dr. Tackett's analogy was kind of apples and oranges. What he was referring to in that particular scenario was, I guess, the analgesic pain-relieving qualities of midazolam. Well, no anesthetic drug necessarily has analgesic qualities. The relevant question is, does it bring you to such a level of unconsciousness that you are not able to perceive pain? And in this case, they admitted it does. It does bring you to a level of a coma. But that's a question you don't have with a barbiturate, right? Because that does have the analgesic effect. Your Honor, actually I believe that the record will indicate in this case that, no, barbiturates are not analgesics. And just in the same way as midazolam. Although their anesthetic qualities are not in question. I mean, it's pretty clear from the record that pentobarbital and sodium thiopental both have anesthetic qualities. It's not as clear that midazolam does. Your Honor, again, that question was not resolved by the district court. Right. And isn't that a problem? Because if it doesn't have anesthetic properties, then we're right back to the Bayes problem of it being unconstitutional to administer the second and third drugs without anesthesia. Well, and I would, although it's not before this Court, I would dispute that particular fact. Right. But if we don't decide that issue, and it turns out that midazolam does not work as an anesthetic, then we are authorizing execution in a facially unconstitutional way simply because the district court didn't get around to deciding that issue. Doesn't that seem like a problem? No, Your Honor, and particularly not in this case. The Supreme Court has already looked at this exact same protocol. There's evidence in the record. Counsel, you lose the fact that the Supreme Court took a case where there had been findings of fact, where the experts had been qualified under Daubert, where the district judge had been very careful, and the Supreme Court's opinion said the Tenth Circuit did not err in holding the district judge's findings not clearly erroneous. And it couldn't find them not clearly erroneous. We're talking about a bench trial in that case that was nowhere near the kind of trial it was in this case. Either an archer or what's before us. Correct, Your Honor. In that case that was litigated, that was in the entire, both prongs of bays, but the district court in this case didn't even need to proceed to a trial because if the court had proceeded a trial— I understand that. All the district court in this case was decide the alternatives. Correct, Your Honor. Okay. If the court made a mistake, it goes back. If this court finds that there was a disputed material issue on that fact, it would go back. I'm deeply concerned with the bedazzling for the reasons I've already expressed. Well, Your Honor, and if I could just get, I'd like to move to that point. As I see the record, both Tackett, forget Tackett. He wasn't pled. That's one of the things you had a good time arguing about. It was sloppy pleading on the part of the plaintiffs. They had evidence and theories they didn't ever put in the complaint. But let's just take the 500 milligrams that they put in the complaint, which was basically what you recommended in the Smith and the other case. Let's assume that for sake of discussion. My understanding is that both of those, the inferences would produce death without pain. Your Honor, that point was never established. I understand that, but one can infer that is the point I'm making. And this is in part because these experts were never interrogated like you would interrogate them in a bench trial. They weren't even asked the questions. Your Honor, Dr. Tackett was the expert who was the only expert who was proposing this particular method. Well, Buffington said the same thing. That wasn't Dr. Buffington's opinion. He was asked during his deposition would 500 milligrams be potentially. The record before us, Dr. Buffington says 500 milligrams would cause death. Yes, Your Honor. He did testify to that. Okay. But again, Your Honor, as proposed. And the inference is it would cause death without the pain that potassium chloride would cause. Your Honor, that may be correct, but that does not mean it significantly reduces a substantial risk of harm. And that is the relevant issue that the district court granted summary judgment on. Pain is a substantial risk of harm, and so that's his testimony. Dr. Buffington testified that in theory that might be a pain-free method, but there was no evidence on that to support that. In fact, he specifically testified that there was patient-to-patient variability in that particular method. The question is whether there's a fact issue. And, Your Honor, that's the State's point in this particular case. There is no fact issue on the relevant standard that matters. The dispute is not whether 500 milligrams may or may not cause death. We think there is. The dispute is whether or not bedazolam without any other drug would cause death. And it would satisfy the Eighth Amendment. Correct. And whether it would substantially reduce the risk. Well, we don't know that because we don't know what the risk is in the three-drug cocktail. Your Honor, again, in this particular case, that was not reached by the district court, but we do know from the Supreme Court that in that particular record. No, we don't know anything from the Supreme Court counsel. That was a case that was tried on facts and found not clearly erroneous. You know better than that. Correct, Your Honor. That is correct. You cite cases to us that have nothing to do with the position we're in here on summary judgment. Yes, Your Honor, that, again, those were, again, that's correct. Those were well-pled cases, well-tried cases with findings of fact and conclusions of law that the Supreme Court said weren't clearly erroneous. And correct, Your Honor, but in this case, in order to even get to a trial, it's the plaintiff's burden to present that particular evidence. I understand. In this case, we would submit he simply did not, where his own expert simply did not, their own expert refuted their own allegations in their complaint. I just want to make that point clear. That's one of the problems. What is the complaint? Your Honor, in their particular – No, what I'm saying is this case was handled so sloppily and so broadly that it's hard figuring out what was in the complaint. I agree that it was an inartfully drawn complaint, but they incorporated everything else with it. Correct, Your Honor. And so what do we do with a case like that? Well, Your Honor, in this case, this Court still can affirm because the issues with the – you mentioned with the Arthur here. The one-drug protocol with midazolam that the plaintiffs alleged did not come up in Arthur. No other – outside of this consolidated litigation, no other plaintiffs are making this claim. And, in fact, this Court has already recognized in Brooks and Grayson the internal inconsistencies of this argument that a one-drug – And we decided those on the way you people briefed the case, both sides, and what the district judge did. And that has no bearing on this case. Your Honor, in turning to this particular case, the plaintiffs were very clear that in their complaint, at least, when it came to their third alternative, the one-drug midazolam protocol, that it only involved one 500-milligram bolus of midazolam. They cited the Supreme Court's opinion in that case. Correct. And what a district judge in Oklahoma found. And – Which should have been stricken. You should have moved to – you should have moved to strike lots of the allegations of the complaint because they were nothing but conclusory things cited from some other case. They weren't pled like cases are pled pursuant to the civil rules. Yes, Your Honor. And you went along with all that. Your Honor, and – yes, we did proceed – What does a court do when the defendant allows inept pleadings with conclusions or laws relying on other cases and other records and other cases? What does a court do? Your Honor, in this case, the district court went forward and this court still can't affirm that. I understand that. Yes. And this court still can't affirm that because based on what they – they still fail to present evidence sufficient to generate a trial based on that particular alternative that they pled. Your Honor, I just want to also – Your Honors, I want to also mention the remaining two alternatives that opposing counsel mentioned as well. The district court's grant of summary judgment in those cases should also be affirmed as well. One of their allegations was a one-drug protocol involving compounded pentobarbital. I just want to briefly mention some of the undisputed facts showing how that was not available to the Alabama Department of Corrections. Number one, it's undisputed that they failed to present any source for that particular drug. They did not name a particular compounding pharmacy, a particular compounding pharmacist, any other type of supplier that could provide that to the Department of Corrections. And under Brooks and Arthur, that is their burden. In Brooks v. Warden, this court held that a known available alternative must show that there's a source for a drug that would supply it to the Alabama Department of Corrections. When the Department of Corrections calls a compounding pharmacy, it can promise confidentiality under the secrecy laws, right? Your Honor, there are – as far as secrecy laws, there are no particular – for example, you may be referring to Georgia. I think Georgia has some statutory laws. There's not a particular law there. Regardless of whether there's a law, the Department of Corrections can call up a compounding pharmacy and say, if you provide the drug, we will give you complete anonymity. In fact, I think Ms. Hill testified that she sometimes had that conversation, didn't she? On occasion, but actually, Ms. Hill testified that a lot of times she wouldn't even reach that point yet because they either couldn't get the ingredient or the particular compounding pharmacy wasn't even willing to engage with the Department of Corrections even further. I understand that, but that is not an option. The promise of anonymity or confidentiality is not an option available to an inmate who makes those calls, is it? Sure, Your Honor. I mean, the inmate obviously couldn't promise something on behalf of the Department of Corrections. But in this particular case, we didn't even get that far because the plaintiffs didn't present any evidence that they actually tried to contact a compounding pharmacy. In their interrogatories, they answered that they had no information on a particular source, and their expert, Dr. Elder, testified that she didn't even try to make – she didn't make any calls to any compounding pharmacy. So it might be that there might be a disputed fact if, for example, they had picked up the phone and called the compounding pharmacy, and they got a response from the compounding pharmacist that, yes, we can acquire the drug, and yes, we can make it. In that case, maybe there would be a disputed fact, and maybe that would prompt the Department of Corrections to pursue that particular source further or flush that out of trial. But they didn't even go that far. They didn't even attempt to – Again, none of this matters if Midazolam does not, in fact, anesthetize the condemned, right? Because then we know from Bayes that administration of the second and third drugs is unconstitutional. So none of it matters if Midazolam does not anesthetize the condemned. It would matter, Your Honor, because under Bayes and Glossop, they're still required to include the known available alternatives. I think we're still stuck on this other thing that I thought we had resolved. Aren't we in agreement that the state cannot use an unconstitutional method to execute a person? That's correct, Your Honor. And an unconstitutional method is different from a method that inflicts some pain, but a constitutional amount of pain. Do you understand that? Are you in agreement with that? As far – yeah, constitutional method, there can be some method of pain, some aspect of pain in that. Yes. Bayes has said that clearly, correct? In Bayes, though, did the Supreme Court not say that if you provide the second and third drugs without first anesthetizing the condemned, that that is an unconstitutional method of execution. Isn't that what the Supreme Court said? I believe, to that effect, yes, Your Honor. Right. So then if that's the case, then we already know, the Supreme Court has already told us that that's unconstitutional. You can't use an unconstitutional method regardless of the alternatives that the defendant comes up with or not, right? Didn't you already say yes to this? We had this discussion earlier. Certainly, but that's not what we're presented with here. Well, but let me tell you why it is. Because the district court did not decide that issue first. If the district court had decided the issue and there were not a material issue of fact about it, if the district court had first determined that administration of midazolam anesthetizes the patient, the prisoner, if that were the case, then I think you would be on solid ground. But we don't have that here. So how can we even get to the alternatives if we don't even have a decision about whether the method of execution is on its face unconstitutional? Well, two things, Your Honor. Number one, Bazer and Glossop never said you must resolve the first question first. Again, the first question is a different question. The first question only comes into play if the method of execution is not unconstitutional on its face. Only if the method of execution may cause some pain but not an unconstitutional amount of pain do we use that Bazer-Glossop test. If the method of execution is facially unconstitutional, we don't use the Bazer-Glossop test because, as we've already agreed, the state cannot use that method of execution regardless of the alternatives that the defendant provides. Right? Your Honor, I just want to point – I would disagree to the extent that in Arthur, this Court affirmed after a trial, be it not summary judgment, the exact same process. In Arthur, the trial was on the second prong of Baze, that part alone, and this Court affirmed in Arthur. And so that is a proper – a court can resolve. But in Arthur, the Court was working with the idea that midazolam did, in fact, anesthetize the condemned. Here, we don't have that kind of finding. That's the problem. This comes to us on summary judgment. Your Honor, the district court didn't make that particular finding in Arthur either. The reason why they granted relief after a trial in that case is because the plaintiffs – It implicitly did. It implicitly did. And when you read through the rest of it and the part about the firing squad, it talks specifically about how if it's – if the method of execution is a method of execution that causes some pain but not an unconstitutional amount of pain, then you go ahead with the glossip and blaze method. Your Honor, I see my time has expired. Thank you. I think we have your case. Mr. Palombi. Your Honor, I'm just going to – do Your Honors have any further questions? No. Do you have any? If you do not, then I would just ask for a remand. Court will be in recess under the usual order. All rise.